**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Vincent S. Sammons
25 Beaver Court
Rising Sun, MD 21911

       PLAINTIFF,

v.

Alan J. McCarthy
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Alfred C. Wein Jr.
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Jason L. Allison
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Jennifer R. Lyall
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Maggie D. Tome
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Robert Meffley
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and

CIVIL ACTION No.: _____

JURY TRIAL DEMANDED

Deborah Sniadowski
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Brian F. Miller
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Cecil County, Maryland
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

DEFENDANTS.

## **COMPLAINT**

NOW COMES the Plaintiff, Vincent S. Sammons, by and through his attorney, Ray M. Shepard and The Shepard Law Firm and pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and Article 40 of the Maryland Declaration of Rights, does hereby sue the Defendants, Alan J. McCarthy, Alfred C. Wein Jr., Jason L. Allison, Jennifer R. Lyall, Maggie D. Tome, Robert Meffley, Deborah Sniadowski, Brian F. Miller, and Cecil County, Maryland, for violations of his rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article 40 of the Maryland Declaration of Rights.  In support of his causes of action, Mr. Sammons alleges as follows:

## PARTIES

1.      Plaintiff Vincent S. Sammons is a citizen of the United States residing in Rising Sun, Cecil County, Maryland.

2

2.        Defendant Alan J. McCarthy was at all relevant times the elected County Executive for Cecil County, Maryland.  Defendant McCarthy's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant McCarthy is sued in both his individual and official capacities.

3.        Defendant Alfred C. Wein Jr. was at all relevant times the Director of Administration for Cecil County, Maryland.  Defendant Wein's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Wein is sued in both his individual and official capacities.

4.        Defendant Jason L. Allison was at all relevant times the attorney for Cecil County, Maryland.  Defendant Allison's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Allison is sued in both his individual and official capacities.

5.        Defendant Jennifer L. Lyall was at all relevant times the Public Information Officer for Cecil County, Maryland.  Defendant Lyall's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Lyall is sued in both her individual and official capacities.

6.        Defendant Maggie D. Tome was at all relevant times a Unified Communications Specialist for Cecil County, Maryland.  Defendant Tome's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding

Plaintiff's federal constitutional claims alleged herein, Defendant Tome is sued in both her individual and official capacities.

7. Defendant Robert Meffley was at all relevant times President of the County Council for Cecil County, Maryland. Defendant Meffley's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Meffley is sued in both his individual and official capacities

8. Defendant Deborah Sniadowski was at all relevant times an Associate Attorney for Cecil County, Maryland. Defendant Sniadowski's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Sniadowski is sued in both her individual and official capacities.

9. Defendant Brian F. Miller was at all relevant times the Director of Information Technology for Cecil County, Maryland. Defendant Miller's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Miller is sued in both his individual and official capacities.

10. Defendant, Cecil County, Maryland is a body corporate and politic, having all the rights and powers of local self-government and home rule as are now or may hereafter be provided or necessarily implied by the Cecil County Charter, the Maryland Constitution and laws of the State of Maryland.

JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1985 and 1986.

12.      This Court has supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(a).

13.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in the district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

STATEMENT OF FACTS

14.      In November 2016, Defendant Alan McCarthy was elected as Cecil County Executive.  The Cecil County Charter provides that the County Executive "shall be the chief executive officer of the County and shall faithfully execute the laws" and that all "executive power vested in the County by the Constitution and laws of Maryland and this Charter shall be vested in the Executive."

15.      After becoming the County Executive, Defendant McCarthy maintained the "Dr. Alan McCarthy Cecil County Executive" Facebook page (hereinafter the "Cecil County Executive Facebook Page").  Screenshots of the Cecil County Executive Facebook Page are attached to this Complaint as **Exhibit 1**.

16.      Defendant McCarthy clothed his Cecil County Executive Facebook Page in the power and prestige of his public office.  For example, the Cecil County Executive Facebook Page contained the official copyrighted County seal and logo of Cecil County and was labeled with McCarthy's position in office, *i.e.*, "Cecil County Executive."   The official "Cecil County

Government" Facebook page contained references to and links to reach the Cecil County Executive Facebook Page.  **Exhibit 2.**

17.    Aspects of the Cecil County Executive Facebook Page bear the hallmarks of a public forum.  Defendant McCarthy used the Cecil County Executive Facebook Page to communicate with his Cecil County constituents, to announce news relevant to the Cecil County community, and to otherwise conduct official business as County Executive.

18.    In addition to conducting county business, the Cecil County Executive Facebook Page was open to the public and contained an interactive section that allowed members of the public to communicate with each other and with McCarthy, to post comments, comment on posts made by others and like or dislike other people's posts.  McCarthy placed no restrictions on the public's access to the Cecil County Executive Facebook Page or use of its interactive component. Additionally, the owner and/or administrator of the Cecil County Executive Facebook Page had the ability to delete posts and to block members of the public from having access to the Cecil County Executive Facebook Page.

19.    On July 18, 2018, Defendant McCarthy, Defendant Wein and the Cecil County Council adopted a written communication plan entitled "Cecil County Government Communication Plan," a copy of which is attached as **Exhibit 3**.

20.    In its discussion of Cecil County Facebook pages, the Communication Plan states in relevant part:

> Cecil County Government reserves the right to monitor and remove any content at any time for any reason at its sole, subjective discretion.  Comments, opinions, advice, statements, discussion posts, wall posts, and any other user-generated content that is deemed inappropriate by Cecil County Government will be removed from the page.

**Exhibit 3**, pg.17.

6

21.    The Communication Plan provides further that, "If an individual continually posts prohibited or offensive material, the Cecil County Government may exercise its right to block that individual from posting content onto the Cecil County Facebook Page." **Exhibit 3**, pg.18.

22.    The Communication Plan prohibits use of the copyrighted Cecil County seal or any other County images or iconography on personal social media sites. **Exhibit 3**, pg.15(4).

23.    In December 2019, it became clear that County Executive McCarthy would face challengers in the Republican 2020 primary election, one of whom would be Danielle Hornberger.

24.    From in or about December 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

25.    Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—were deleted and Plaintiff Sammons was blocked from making further posts and blocked from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

26.    On May 12, 2020, a public budget meeting was held virtually because of the Corona Virus pandemic.  Members of the public and some members of Cecil County government participated by Zoom Meeting.  During the meeting, participants were able to see other participants in separate windows on their computer screens and were able to have real time voice communications.

27.    Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made.  The three signs

read: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases." *See* **Exhibit 4.**

28.    As the meeting progressed, Plaintiff Sammons' video feed loop was intentionally blocked while other video feeds, such as one stating, "Yes to Southfields," were allowed to remain up and visible to all meeting participants during the entire meeting.

29.    When Plaintiff Sammons' video feed was blocked during the May 12, 2020 budget meeting, Mr. Sammons received the following message on his computer screen: "You cannot start your video because the host has stopped it." **Exhibit 5.**

30.    The following day, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, stating in part as follows:

> I was very disappointed on the abuse of technology to subdue my freedom of speech and the opportunity to interject and speak about the pending budget. I and others have been blocked from the County Executive social media page that I have officially communicated to the county twice on this matter, The first time the county attorney corrected it and the second time he made some lame legal opinion on why he [McCarthy] can block others. To this day I remained blocked from commenting and correcting the County Executive on his false messages to the public while his cheerleaders sing him praise.

> Nevertheless, last night I wanted to speak out on how embarrassed I was to call these elected official[s] Republicans due to their liberal tax and spend policies and I did not want the taxes to go up yet again. I also had a video feed up during the meeting that had several signs made that reflected my opinions on this that was later silenced as McCarthy did not like the fair but negative messaging. Meanwhile, [t]he "YES to Southfields" video feed was allowed to continue throughout the online session. I was "given an opportunity" to speak last night however my mic was open so briefly [that by] the time I unmuted my mic the "opportunity" was over. . . .

> In closing, I would like for the county Executive to UNBLOCK EVERYONE (not only me) and be allowed to have our voices back and give him the criticism he is deserving of on his tax and spend policies.

**Exhibit 6.**

31.    On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council.  This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news.  The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

**Exhibit 6.**

32.    After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda. You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials." **Exhibit 6.**

33.    Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."  **Exhibit 6.**

34.    In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

> No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

**Exhibit 6.**

<u>LEGAL FRAMEWORK</u>

### A. Federal Claims

35.　　The First Amendment of the United States Constitution guarantees, among other fundamental rights, Plaintiff's right to free speech and Plaintiff's right to petition the government for redress of grievances.

36.　　At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. "The freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50-51 (1988). "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham v. North Carolina,* 137 S.Ct. 1730, 1735 (2017).

37.　　The Supreme Court of the United States has long recognized that, "[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures." *Falwell,* 485 U.S. at 51-52 (quoting *Baumgartner v. United States,* 322 U.S. 665, 673-674 (1944)). It is clearly established that "[t]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Comm'n,* 572 U.S. 185, 203 (2014). "The sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of those who hold public office or those public figures who are intimately involved in the resolution of important public questions or,

10

by reason of their fame, shape events in areas of concern to society at large." *Hustler Magazine, Inc.,* 485 U.S. at 51.

38.     The Supreme Court "has sought to protect the right to speak in [a] spatial context." A basic rule, for example, "is that a street or a park is a quintessential forum for the exercise of First Amendment rights." *Packingham,* 137 S.Ct. at 1735 (citing *Ward v. Rock Against Racism,* 491 U. S. 781, 796 (1989)). "Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire." *Id.*

39.     "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace— the 'vast democratic forums of the Internet' in general, *Reno v. American Civil Liberties Union,* 521 U. S. 844, 868 (1997), and social media in particular." *Packingham,* 137 S.Ct. at 1735.

40.     Social media platforms that permit the free exchange of ideas, such as Facebook and the Cecil County Executive Facebook Page, are modern-day equivalents to streets or a park, and are subject to traditional public forum analysis for First Amendment purposes. *Davison v. Randall,* 912 F.3d 666, 682 (4th Cir. 2019).

41.     Official censorship based on a government actor's subjective judgment that the content of protected speech is offensive or inappropriate is unconstitutional "viewpoint discrimination." *Matal v. Tam,* 137 S.Ct. 1744, 1763 (2017). Viewpoint discrimination is an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 828 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 (1983). In other words, discrimination against speech because of its message is presumed to be unconstitutional.

42.     Viewpoint discrimination is prohibited in all forums and "is apparent, for example, where a government official's decision to take a challenged action was 'impermissibly motivated by a desire to suppress a particular point of view.'"  *Davison v. Randall,* 912 F.3d 666, 687 (4th Cir. 2019)(citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 802 (1985)).

43.     The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution commands that similarly situated persons be treated alike.  *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  When, as occurred in this case, an equal protection violation arises from a First Amendment violation, the two claims are "fused" together. *Hardwick v. Heyward,* 711 F.3d 426, 442 (4th Cir. 2013)(citing *R.A.V. v. City of St. Paul, Minn*., 505 U.S. 377, 384-85 n.4 (1992)).

44.     Federal statutory law permits Plaintiff to bring a private cause of action to redress violations of his rights guaranteed by the Bill of Rights in the United States Constitution. Specifically, 42 U.S.C. § 1983 provides in pertinent part that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . ."

45.     Another provision, 42 U.S.C. § 1985, addresses civil conspiracies to violate constitutionally protected rights and provides in pertinent part that, "If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws,

or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

46.      A closely related provision, 42 U.S.C. § 1986, provides in part that, "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USC § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; …"

47.      Congress has also provided that in an action such as this one to enforce a provision of Title 42, Section 1983, 1985, and/or 1986, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . ." *See* 42 U.S.C. § 1988(b).  The Court may also include expert witness fees when awarding attorney's fees. 42 U.S.C. § 1988(c).

48.      As used in 42 U.S.C. §§ 1983, 1985, and 1986, the term "person" includes all individual Defendants in this action.  Defendant Cecil County, Maryland, is also a "person" within the meaning of these statutes.  *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1977*).*

### B. State Law Claims

49.     In addition to the federal legal framework discussed *infra,* Article 40 of the Maryland Declaration of Rights provides State Constitutional protections coextensive with the First Amendment of the United States Constitution. *DiPino v. Davis,* 354 Md. 18, 43, 729 A.2d 354, 367 (1999)(citing *Jakanna v. Montgomery County,* 344 Md. 584, 689 A.2d 65 (1997)).

50.     Although the rights protected by Article 40 of the Maryland Declaration of Rights are coextensive with the rights protected under the First Amendment of the United States Constitution, the legal analysis of State Constitutional torts differs substantially from the legal analysis applicable to claims asserted under 42 U.S.C. §§ 1983, 1985, and/or 1986.  First, unlike federal claims brought under Title 42, and unlike some common law torts, "neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *DiPino,* 354 Md. at 51; *Ritchie v. Donnelly,* 324 Md. 344, 373-74, 597 A.2d 432, 446 (1991).

51.     Second, the "personal/official capacity distinction applied in § 1983 actions" does not apply when considering State Constitutional claims. *DiPino,* 354 Md. at 51.  The Maryland Court of Appeals has explained:

> This Court has consistently held that a public official who violates the plaintiff's rights under the Maryland Constitution is personally liable for compensatory damages. . . . This liability for damages resulting from unconstitutional acts is in no way based upon the 'official/individual capacity' body of law which has developed in federal § 1983 claims. Liability has been imposed upon the government official when his unconstitutional actions were in accordance with or dictated by governmental policy or custom. Liability has also been imposed when the unconstitutional acts were inconsistent with governmental policy or custom. Moreover, contrary to the view of the circuit court in the present case, liability has been imposed upon the official when he was acting in the scope of his employment.

*Ritchie,* 324 Md. at 370-71, 597 A.2d at 445 (internal citations omitted).

14

52.     Finally, "[a] third difference hinges on the existence of *respondeat superior* liability on the part of local governmental entities for State Constitutional violations. There is no such vicarious liability under § 1983, because of the distinction drawn between personal and official capacity actions." *DiPino,* 354 Md. at 51.  The Court of Appeals went on to say that, "We shall now dispel any doubt in the matter and make clear, as a matter of common law, that local governmental entities do, indeed, have *respondeat superior* liability for civil damages resulting from  State Constitutional violations committed by their agents and employees within the scope of the employment."

53.     The Local Government Tort Claims Act ("LGTCA") provides that a local government entity "shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government."  Md. Courts & Jud. Proc. Code § 5-303(b).

54.     A local government's liability is limited under the LGTCA to a maximum of $400,000 per individual claim, and $800,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions. Md. Courts & Jud. Proc. Code § 5-303(a).

55.     Subject to the aforesaid damage caps, "a local government may indemnify an employee for a judgment for punitive damages entered against the employee," however, the local government itself may not be liable for punitive damages. Md. Courts & Jud. Proc. Code § 5-303(c).  The local government entity may not assert governmental or sovereign immunity to avoid its duty to defend or indemnify an employee.  Md. Courts & Jud. Proc. Code § 5-303(b)(2).

56.     On October 8, 2020, Plaintiff provided notice of his claims alleged herein to the County Council of Cecil County, Maryland pursuant to Md. Courts & Jud. Proc. Code § 5-304(b). *See* **Exhibit 7.**

57.     With respect to Plaintiff's federal claims alleged below, all individual defendants are sued in both their personal and official capacities, and the local government defendant is not separately named.  A claim against a public official in their official capacity is equivalent to a claim against the municipality itself. *Davison v. Randall,* 912 F.3d 666, 688 (4th Cir. 2019)(additional citations omitted); *Hafer v. Melo,* 502 U.S. 21, 25 (1991)(official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.")(quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

COUNT I
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY EXECUTIVE FACEBOOK PAGE
(Defendants: Jennifer Lyall, Jason Allison, and Alan McCarthy)
42 U.S.C. § 1983

58.     Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

59.     Defendants Lyall, Allison and McCarthy created, administered and/or managed the Cecil County Executive Facebook Page.

60.     The Cecil County Executive Facebook Page was open to the public for the exchange of political ideas and discussion, both with County Executive McCarthy and other members of the public, was used by McCarthy to communicate with his constituents as County Executive and was used to otherwise conduct the business of Cecil County.  The Cecil County Executive Facebook Page contained the official seal and logo of Cecil County government and identified the page as "The Dr. Alan McCarthy County Executive" Facebook Page.  The interactive portions of the Cecil County Executive Facebook Page constituted a public forum.

61.     From in or about December 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of

16

Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

62.    Defendants Lyall, Allison and/or McCarthy, acting under color of state law, deleted Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

63.    Defendants Lyall, Allison and/or McCarthy, continuing to act under color of state law, blocked Plaintiff Sammons from making further posts on the Cecil County Executive Facebook Page and blocked Plaintiff Sammons from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

64.    In their acts of deleting Plaintiff's posts and blocking Plaintiff's access to the Cecil County Executive Facebook Page, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax and other policies.

65.    By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

66.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they deleted Plaintiff's posts from the Cecil County Executive Facebook Page and blocked him from the public forum.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Lyall, Allison and McCarthy, jointly and severally, in an amount to be determined at trial, together

with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

## COUNT II
### FIRST AMENDMENT VIEWPOINT DISCRIMINATION
### BLOCKED FROM CECIL COUNTY EXECUTIVE FACEBOOK PAGE
(Defendants: Jennifer Lyall, Jason Allison, and Alan McCarthy)
42 U.S.C. § 1985

67.     Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

68.     Defendants Lyall, Allison and McCarthy created, administered and/or managed the Cecil County Executive Facebook Page.

69.     The Cecil County Executive Facebook Page was open to the public for the exchange of political ideas and discussion, both with County Executive McCarthy and other members of the public, was used by McCarthy to communicate with his constituents as County Executive and was used to otherwise conduct the business of Cecil County.  The Cecil County Executive Facebook Page contained the official seal and logo of Cecil County government and identified the page as "The Dr. Alan McCarthy County Executive" Facebook Page.  The interactive portions of the Cecil County Executive Facebook Page constituted a public forum.

70.     From in or about December 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

71.     Defendants Lyall, Allison and McCarthy conspired to deprive Plaintiff Sammons of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

72. In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act in furtherance thereof, to wit, the Defendants deleted Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

73. Defendants Lyall, Allison and McCarthy committed further overt acts in furtherance of the conspiracy, namely Defendants blocked Plaintiff Sammons from making further posts on the Cecil County Executive Facebook Page and blocked Plaintiff Sammons from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

74. In their acts of deleting Plaintiff's posts and blocking Plaintiff's access to the Cecil County Executive Facebook Page, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax and other policies.

75. Defendants' achieved the objective of their conspiracy. By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

76. Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they deleted Plaintiff's posts from the Cecil County Executive Facebook Page and blocked him from the public forum.

77. Defendants further acted intentionally and with actual malice towards Plaintiff Sammons to deny Plaintiff equal protection of the laws in violation of the Fourteenth Amendment

in that Defendants targeted Plaintiff's posts and blocked Plaintiff from the Cecil County Executive Facebook Page because they disliked his viewpoints while simultaneously permitting other posts by constituents making favorable comments about County Executive McCarthy and not blocking those constituents from accessing the public forum.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Lyall, Allison and McCarthy, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

## COUNT III
## FIRST AMENDMENT VIEWPOINT DISCRIMINATION
## BLOCKED FROM CECIL COUNTY EXECUTIVE FACEBOOK PAGE
### (Defendants: Jennifer Lyall, Jason Allison, and Alan McCarthy)
### 42 U.S.C. § 1986

78.     Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

79.     Defendants Lyall, Allison and McCarthy created, administered and/or managed the Cecil County Executive Facebook Page.

80.     The Cecil County Executive Facebook Page was open to the public for the exchange of political ideas and discussion, both with County Executive McCarthy and other members of the public, was used by McCarthy to communicate with his constituents as County Executive and was used to otherwise conduct the business of Cecil County. The Cecil County Executive Facebook Page contained the official seal and logo of Cecil County government and identified the page as "The Dr. Alan McCarthy County Executive" Facebook Page. The interactive portions of the Cecil County Executive Facebook Page constituted a public forum.

81.     From in or about December 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

82.     Defendants Lyall, Allison and McCarthy conspired to deprive Plaintiff Sammons of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

83.     In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act in furtherance thereof, to wit, the Defendants deleted Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

84.     Defendants Lyall, Allison and McCarthy committed further overt acts in furtherance of the conspiracy, namely Defendants blocked Plaintiff Sammons from making further posts on the Cecil County Executive Facebook Page and blocked Plaintiff Sammons from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

85.     In their acts of deleting Plaintiff's posts and blocking Plaintiff's access to the Cecil County Executive Facebook Page, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax and other policies.

86.     Defendants' achieved the objective of their conspiracy.  By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied

21

Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

87. Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they deleted Plaintiff's posts from the Cecil County Executive Facebook Page and blocked him from the public forum.

88. Defendants further acted intentionally and with actual malice towards Plaintiff Sammons to deny Plaintiff equal protection of the laws in violation of the Fourteenth Amendment in that Defendants targeted Plaintiff's posts and blocked Plaintiff from the Cecil County Executive Facebook Page because they disliked his viewpoints while simultaneously permitting other posts by constituents making favorable comments about County Executive McCarthy and not blocking those constituents from accessing the public forum.

89. Defendants Lyall, Allison and McCarthy had knowledge that the wrongs conspired to be done in violation of Plaintiff Sammons' First and Fourteenth Amendment rights were about to be committed, and having power to prevent or aid in preventing the commission of the same, Defendants neglected or refused so to do.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Lyall, Allison and McCarthy, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT IV
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM PUBLIC BUDGET MEETING
(Defendants: Alan McCarthy, Alfred Wien, Maggie Tome and Robert Meffley)
42 U.S.C. § 1983

90.     Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

91.     On May 12, 2020, the Cecil County Council, with participation from the County Executive, Defendant McCarthy, held a public budget meeting conducted virtually via Zoom Meeting.

92.     Pursuant to the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* the Cecil County budget meeting was open to the public and the citizens participating in the public meeting had the right to have notice of the meeting, the right to attend the meeting, and the right to participate in the public discussion of the proposed budget.

93.     The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website.  The recording may be viewed by navigating to the following  link:  https://www.ccgov.org/Home/Components/Calendar/Event/8846/20  and  then selecting the "Audio/Video" link on the page.

94.     Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual Zoom window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made.  The three signs said: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."

95.     Defendants McCarthy, Wien, Tome and Meffley, acting under color of state law, intentionally blocked Plaintiff Sammons' video feed loop while other video feeds, such as one stating, "Yes to Southfields," were allowed to remain up and visible to all meeting participants during the entire meeting.

23

96.     When Plaintiff Sammons' video feed was blocked during the May 12, 2020 budget meeting, Mr. Sammons received the following message on his computer screen: "You cannot start your video because the host has stopped it."

97.     Defendants McCarthy, Wien, Tome and Meffley, continuing to act under color of state law, also denied Plaintiff Sammons a reasonable opportunity to speak at the public budget meeting by unmuting his Zoom connection for only a spilt second and then re-muting Plaintiff Sammons before he could speak.

98.     In their acts of blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax policies, advocated voting for one of McCarthy's primary opponents, and complained about being blocked from the Cecil County Executive Facebook Page.

99.     By blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

100.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they blocked Plaintiff's video feed and prevented Plaintiff Sammons from speaking during the public budget meeting.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Wien, Tome and Meffley, jointly and severally, in an amount to be determined at trial,

together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT V
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM PUBLIC BUDGET MEETING
(Defendants: Alan McCarthy, Alfred Wien, Maggie Tome and Robert Meffley)
42 U.S.C. § 1985

101.    Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

102.    On May 12, 2020, the Cecil County Council, with participation from the County Executive, Defendant McCarthy, held a public budget meeting conducted virtually via Zoom Meeting.

103.    Pursuant to the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* the Cecil County budget meeting was open to the public and the citizens participating in the public meeting had the right to have notice of the meeting, the right to attend the meeting, and the right to participate in the public discussion of the proposed budget.

104.    The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website.  The recording may be viewed by navigating to the following  link:  https://www.ccgov.org/Home/Components/Calendar/Event/8846/20  and  then selecting the "Audio/Video" link on the page.

105.    Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual Zoom window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made.  The three signs said: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."

106.    Defendants McCarthy, Wien, Tome and Meffley conspired to deprive Plaintiff Sammons of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

107.    In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act in furtherance thereof, to wit, the Defendants blocked Plaintiff Sammons' video feed critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

108.    Defendants McCarthy, Wien, Tome and Meffley committed further overt acts in furtherance of the conspiracy, namely Defendants blocked Plaintiff Sammons from speaking during the public budget meeting by un-muting and then re-muting Plaintiff's Zoom connection without allowing a reasonable time for Plaintiff Sammons to speak.

109.    In their acts of blocking Plaintiff's video feed and preventing Plaintiff from speaking during the public budget meeting, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax policies, encouraged citizens to vote for one of McCarthy's primary challengers and complained about blocking Plaintiff Sammons from the Cecil County Executive Facebook Page.

110.    Defendants' achieved the objective of their conspiracy.  By blocking Plaintiff's video feed and preventing Plaintiff from speaking during the public budget meeting, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

111.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they blocked Plaintiff's video feed and prevented Plaintiff from speaking during the public budget meeting.

112.    Defendants further acted intentionally and with actual malice towards Plaintiff Sammons to deny Plaintiff equal protection of the laws in violation of the Fourteenth Amendment in that Defendants targeted Plaintiff and his video feed because they disliked his viewpoints while simultaneously permitting other constituents to speak and to post video feeds with messages not unfavorable to the County Executive.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Wien, Tome and Meffley, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT VI
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM PUBLIC BUDGET MEETING
(Defendants: Alan McCarthy, Alfred Wien, Maggie Tome and Robert Meffley)
42 U.S.C. § 1986

113.    Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

114.     On May 12, 2020, the Cecil County Council, with participation from the County Executive, Defendant McCarthy, held a public budget meeting conducted virtually via Zoom Meeting.

115.    Pursuant to the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* the Cecil County budget meeting was open to the public and the citizens participating in the

27

public meeting had the right to have notice of the meeting, the right to attend the meeting, and the right to participate in the public discussion of the proposed budget.

116. The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website. The recording may be viewed by navigating to the following link: https://www.ccgov.org/Home/Components/Calendar/Event/8846/20 and then selecting the "Audio/Video" link on the page.

117. Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual Zoom window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made. The three signs said: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."

118. Defendants McCarthy, Wien, Tome and Meffley conspired to deprive Plaintiff Sammons of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

119. In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act in furtherance thereof, to wit, the Defendants blocked Plaintiff Sammons' video feed critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

120. Defendants McCarthy, Wien, Tome and Meffley committed further overt acts in furtherance of the conspiracy, namely Defendants blocked Plaintiff Sammons from speaking during the public budget meeting by un-muting and then re-muting Plaintiff's Zoom connection without allowing a reasonable time for Plaintiff Sammons to speak.

121.   In their acts of blocking Plaintiff's video feed and preventing Plaintiff from speaking during the public budget meeting, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax policies, encouraged citizens to vote for one of McCarthy's primary challengers and complained about blocking Plaintiff Sammons from the Cecil County Executive Facebook Page.

122.   Defendants' achieved the objective of their conspiracy.  By blocking Plaintiff's video feed and preventing Plaintiff from speaking during the public budget meeting, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

123.   Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they blocked Plaintiff's video feed and prevented Plaintiff from speaking during the public budget meeting.

124.   Defendants further acted intentionally and with actual malice towards Plaintiff Sammons to deny Plaintiff equal protection of the laws in violation of the Fourteenth Amendment in that Defendants targeted Plaintiff and his video feed because they disliked his viewpoints while simultaneously permitting other constituents to speak and to post video feeds with messages not unfavorable to the County Executive.

125.   Defendants McCarthy, Wien, Tome and Meffley had knowledge that the wrongs conspired to be done in violation of Plaintiff Sammons' First and Fourteenth Amendment rights were about to be committed, and having power to prevent or aid in preventing the commission of the same, Defendants neglected or refused so to do.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Wien, Tome and Meffley, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT VII
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY AGENCY EMAIL SYSTEMS
(Defendants: Alan McCarthy, Jason Allison, Robert Meffley,
Alfred Wein, Deborah Sniadowski, and Brian F. Miller).
42 U.S.C. § 1983

126.   Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

127.   On May 13, 2020, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, complaining about the treatment he had received at the public budget meeting and about being blocked from the Cecil County Executive Facebook Page. *See supra* ¶ 30.

128.   On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council. This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news. The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

129.   After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following

30

to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda. You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials."

130.    Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."

131.    In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

132.    "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

133.    The First Amendment also "protects the right to petition the government for a redress of grievances." *Martin v. Duffy,* 858 F.3d 239, 249 (4th Cir. 2017).  The right to petition the government for a redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill State Bar Ass'n,* 389 U.S. 217, 222 (1967).

134.    On May 13, 2020 and again on May 18, 2020, when Plaintiff Sammons submitted his email grievances to Massey, Allison, and the entire Cecil County Council, Plaintiff was engaged in conduct protected by the First Amendment.  Plaintiff Sammons was likewise engaging in protected First Amendment conduct when he posted and attempted to communicate on the Cecil

31

County Executive Facebook Page and when he attempted to participate in the public budget meeting on May 12, 2020.

135.   Burdens placed upon free speech, as well as outright bans, violate the First Amendment. *See Sorrell v. IMS Health Inc.,* 564 U.S. 552, 566 (2011)(stating that government "may no more silence unwanted speech by burdening its utterance than by censoring its content"); *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 812 (2000)("The distinction between laws burdening and laws banning speech is but a matter of degree. The Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.").

136.   When the government has discriminated against a speaker based on the speaker's viewpoint, as occurred in this case, the victim's ability to engage in other speech does not cure that constitutional shortcoming. *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. Of the Law v. Martinez,* 561 U.S. 661, 690 (2010).

137.   Defendant Allison's email responses to Plaintiff Sammons on May 19, 2020, in which Allison says he will "engage [Plaintiff Sammons] in war" and will "block [Plaintiff Sammons] from all communication with County agencies" constitutes unconstitutional retaliation for Plaintiff's exercise of protected activity under the First Amendment.  Defendant Allison was acting under color of state law when making these statements.

138.   Defendant Allison, acting at the direction of Defendant McCarthy and under color of state law, copied Defendants Wein, Sniadowski, and Miller on his email dated May 19, 2020 in which Allison states to Plaintiff Sammons: "What I'm doing is blocking you from further communication via email. . . . You have the right to communicate with County government.  Your right is now restricted to paper and pen writing delivered via USPS."

139.    Thereafter, from approximately May 19, 2020 until on or about June 15, 2020, all emails from Plaintiff Sammons to any recipient within the Cecil County government were blocked or redirected so that they never reached their intended recipients.

140.    Defendants' action of banning Plaintiff Sammons from communicating with government officials via email was committed under color of state law and constitutes a clear and egregious violation of his First Amendment rights.

141.    The fact that Plaintiff Sammons remained free to communicate with Cecil County government officials in other ways between May 19, 2020 and June 15, 2020—such as through the U.S. postal service—cannot excuse Defendants for violating Plaintiff Sammons' constitutional rights.

142.    Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials was intentional and demonstrates the Defendants acted with actual malice and with a specific intent to harm Plaintiff's constitutional rights in an egregious way.

143.    Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials demonstrate further unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints and their dislike of his stated grievances.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Allison, Wein, Sniadowski, and Miller, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT VIII
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY AGENCY EMAIL SYSTEMS
(Defendants: Alan McCarthy, Jason Allison, Robert Meffley,
Alfred Wein, Deborah Sniadowski, and Brian F. Miller).
42 U.S.C. § 1985

144. Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

145. On May 13, 2020, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, complaining about the treatment he had received at the public budget meeting and about being blocked from the Cecil County Executive Facebook Page. *See supra* ¶ 30.

146. On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council. This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news. The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

147. After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda.

You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials."

148. Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."

149. In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

150. On May 13, 2020 and again on May 18, 2020, when Plaintiff Sammons submitted his email grievances to Massey, Allison, and the entire Cecil County Council, Plaintiff was engaged in conduct protected by the First Amendment.  Plaintiff Sammons was likewise engaging in protected First Amendment conduct when he posted and attempted to communicate on the Cecil County Executive Facebook Page and when he attempted to participate in the public budget meeting on May 12, 2020.

151. Defendants McCarthy, Allison, Meffley, Wein, Sniadowski, and Miller conspired to retaliate against Plaintiff Sammons and to deprive Plaintiff Sammons of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

152. In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act in furtherance thereof, to wit, the Defendants blocked Plaintiff Sammons' ability to communicate via email with anyone in Cecil County government.

153. In their acts of blocking Plaintiff's email access to Cecil County government agencies the Defendants engaged in unconstitutional viewpoint discrimination and

unconstitutional retaliation because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints.

154.    Defendants' achieved the objective of their conspiracy.  By blocking Plaintiff's email access the Defendants effectively and with actual malice denied Plaintiff of the ability to communicate with Cecil County government officials via electronic mail and substantially restricted Plaintiff's First Amendment rights by requiring him to communicate with County Officials, if in writing, via a much slower and more cumbersome method, pen and paper sent through the U.S. Postal Service.

155.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they blocked Plaintiff's email and prevented Plaintiff from communicating with Cecil County officials by that means.

156.    Defendants further acted intentionally and with actual malice towards Plaintiff Sammons to deny Plaintiff equal protection of the laws in violation of the Fourteenth Amendment in that Defendants targeted Plaintiff and banned only Plaintiff's emails while simultaneously permitting other constituents to communicate with Cecil County government via electronic mail.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Allison, Wein, Sniadowski, and Miller, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT IX
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY AGENCY EMAIL SYSTEMS
(Defendants: Alan McCarthy, Jason Allison, Robert Meffley,
Alfred Wein, Deborah Sniadowski, and Brian F. Miller).
42 U.S.C. § 1986

36

157.    Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

158.    On May 13, 2020, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, complaining about the treatment he had received at the public budget meeting and about being blocked from the Cecil County Executive Facebook Page.  *See supra* ¶ 30.

159.    On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council.  This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news.  The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

160.    After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda. You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials."

161.    Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."

162.    In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

163.    On May 13, 2020 and again on May 18, 2020, when Plaintiff Sammons submitted his email grievances to Massey, Allison, and the entire Cecil County Council, Plaintiff was engaged in conduct protected by the First Amendment.  Plaintiff Sammons was likewise engaging in protected First Amendment conduct when he posted and attempted to communicate on the Cecil County Executive Facebook Page and when he attempted to participate in the public budget meeting on May 12, 2020.

164.    Defendants McCarthy, Allison, Meffley, Wein, Sniadowski, and Miller conspired to retaliate against Plaintiff Sammons and to deprive Plaintiff Sammons of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

165.    In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act in furtherance thereof, to wit, the Defendants blocked Plaintiff Sammons' ability to communicate via email with anyone in Cecil County government.

166.    In their acts of blocking Plaintiff's email access to Cecil County government agencies the Defendants engaged in unconstitutional viewpoint discrimination and unconstitutional retaliation because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints.

167.    Defendants' achieved the objective of their conspiracy.  By blocking Plaintiff's email access the Defendants effectively and with actual malice denied Plaintiff of the ability to communicate with Cecil County government officials via electronic mail and substantially restricted Plaintiff's First Amendment rights by requiring him to communicate with County Officials, if in writing, via a much slower and more cumbersome method, pen and paper sent through the U.S. Postal Service.

168.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they blocked Plaintiff's email and prevented Plaintiff from communicating with Cecil County officials by that means.

169.    Defendants further acted intentionally and with actual malice towards Plaintiff Sammons to deny Plaintiff equal protection of the laws in violation of the Fourteenth Amendment in that Defendants targeted Plaintiff and banned only Plaintiff's emails while simultaneously permitting other constituents to communicate with Cecil County government via electronic mail.

170.    Defendants McCarthy, Allison, Meffley, Wein, Sniadowski, and Miller had knowledge that the wrongs conspired to be done in violation of Plaintiff Sammons' First and Fourteenth Amendment rights were about to be committed, and having power to prevent or aid in preventing the commission of the same, Defendants neglected or refused so to do.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Allison, Wein, Sniadowski, and Miller, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT X
ARTICLE 40 VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY EXECUTIVE FACEBOOK PAGE
(Defendants: Jennifer Lyall, Jason Allison, Alan McCarthy and Cecil County)

171.   Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

172.   Defendants Lyall, Allison and McCarthy created, administered and/or managed the Cecil County Executive Facebook Page.

173.   At all relevant times, Defendants Lyall, Allison and McCarthy were employees of Defendant Cecil County, Maryland or were the agents of Cecil County, Maryland.

174.   The Cecil County Executive Facebook Page was open to the public for the exchange of political ideas and discussion, both with County Executive McCarthy and other members of the public, was used by McCarthy to communicate with his constituents as County Executive and was used to otherwise conduct the business of Cecil County.  The Cecil County Executive Facebook Page contained the official seal and logo of Cecil County government and identified the page as "The Dr. Alan McCarthy County Executive" Facebook Page.  The interactive portions of the Cecil County Executive Facebook Page constituted a public forum.

175.   From in or about December 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

176.   Defendants Lyall, Allison and/or McCarthy, acting within the scope of their employment, deleted Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

177.    Defendants Lyall, Allison and/or McCarthy, acting within the scope of their employment, blocked Plaintiff Sammons from making further posts on the Cecil County Executive Facebook Page and blocked Plaintiff Sammons from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

178.    In their acts of deleting Plaintiff's posts and blocking Plaintiff's access to the Cecil County Executive Facebook Page, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax and other policies.

179.    By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of Article 40 of the Maryland Declaration of Rights.

180.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by Article 40 of the Maryland Declaration of Rights when they deleted Plaintiff's posts from the Cecil County Executive Facebook Page and blocked him from the public forum.

181.    Defendant Cecil County, Maryland is liable for the acts of Defendants Lyall, Allison and McCarthy on the theory of *respondeat superior.*

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Lyall, Allison, McCarthy and Cecil County Maryland, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

COUNT XI
ARTICLE 40 VIEWPOINT DISCRIMINATION
BLOCKED FROM PUBLIC BUDGET MEETING
(Defendants: Alan McCarthy, Alfred Wien,
Maggie Tome, Robert Meffley
and Cecil County)

182.   Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

183.   On May 12, 2020, the Cecil County Council, with participation from the County Executive, Defendant McCarthy, held a public budget meeting conducted virtually via Zoom Meeting.

184.   Pursuant to the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* the Cecil County budget meeting was open to the public and the citizens participating in the public meeting had the right to have notice of the meeting, the right to attend the meeting, and the right to participate in the public discussion of the proposed budget.

185.   The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website.  The recording may be viewed by navigating to the following  link:  https://www.ccgov.org/Home/Components/Calendar/Event/8846/20  and  then selecting the "Audio/Video" link on the page.

186.   Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual Zoom window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made.  The three signs said: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."

187.   Defendants McCarthy, Wien, Tome and Meffley, acting within the scope of their employment or agency with Defendant Cecil County, Maryland, intentionally blocked Plaintiff

Sammons' video feed loop while other video feeds, such as one stating, "Yes to Southfields," were allowed to remain up and visible to all meeting participants during the entire meeting.

188.   When Plaintiff Sammons' video feed was blocked during the May 12, 2020 budget meeting, Mr. Sammons received the following message on his computer screen: "You cannot start your video because the host has stopped it."

189.   Defendants McCarthy, Wien, Tome and Meffley, continuing to act within the scope of their employment or agency with Defendant Cecil County, Maryland, also denied Plaintiff Sammons a reasonable opportunity to speak at the public budget meeting by unmuting his Zoom connection for only a spilt second and then re-muting Plaintiff Sammons before he could speak.

190.   In their acts of blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax policies, advocated voting for one of McCarthy's primary opponents, and complained about being blocked from the Cecil County Executive Facebook Page.

191.   By blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of Article 40 of the Maryland Declaration of Rights.

192.   Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by Article 40 of the Maryland Declaration of Rights when they blocked Plaintiff's video feed and prevented Plaintiff Sammons from speaking during the public budget meeting.

193.   Defendant Cecil County, Maryland is liable for the acts of Defendants McCarthy, Wien, Tome, and Meffley on the theory of *respondeat superior.*

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Wien, Tome, Meffley and Cecil County Maryland, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

COUNT XII
ARTICLE 40 VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY AGENCY EMAIL SYSTEMS
(Defendants: Alan McCarthy, Jason Allison, Robert Meffley,
Alfred Wein, Deborah Sniadowski, Brian F. Miller, and Cecil County)

194.   Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

195.   On May 13, 2020, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, complaining about the treatment he had received at the public budget meeting and about being blocked from the Cecil County Executive Facebook Page.  *See supra* ¶ 30.

196.   On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council.  This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news.  The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

44

197.   After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda. You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials."

198.   Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."

199.   In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

200.   On May 13, 2020 and again on May 18, 2020, when Plaintiff Sammons submitted his email grievances to Massey, Allison, and the entire Cecil County Council, Plaintiff was engaged in conduct protected by Article 40 of the Maryland Declaration of Rights.  Plaintiff Sammons was likewise engaging in conduct protected by Article 40 when he posted and attempted to communicate on the Cecil County Executive Facebook Page and when he attempted to participate in the public budget meeting on May 12, 2020.

201.   Defendant Allison's email responses to Plaintiff Sammons on May 19, 2020, in which Allison says he will "engage [Plaintiff Sammons] in war" and will "block [Plaintiff

Sammons] from all communication with County agencies" constitutes unconstitutional retaliation for Plaintiff's exercise of protected activity under Article 40 of the Maryland Declaration of Rights. Defendant Allison was acting within the scope of his employment with Defendant Cecil County, Maryland when making these statements.

202.    Defendant Allison, acting at the direction of Defendant McCarthy and within the scope of his employment with Defendant Cecil County, Maryland, copied Defendants Wein, Sniadowski, and Miller on his email dated May 19, 2020 in which Allison states to Plaintiff Sammons: "What I'm doing is blocking you from further communication via email. . . . You have the right to communicate with County government.  Your right is now restricted to paper and pen writing delivered via USPS."

203.    Thereafter, from approximately May 19, 2020 until on or about June 15, 2020, all emails from Plaintiff Sammons to any recipient within the Cecil County government were blocked or redirected so that they never reached their intended recipients.

204.    Defendants' action of banning Plaintiff Sammons from communicating with government officials via email was committed within the scope of their employment with Defendant Cecil County, Maryland and constitutes a clear and egregious violation of Article 40 of the Maryland Declaration of Rights.

205.    The fact that Plaintiff Sammons remained free to communicate with Cecil County government officials in other ways between May 19, 2020 and June 15, 2020—such as through the U.S. postal service—cannot excuse Defendants for violating Plaintiff Sammons' State constitutional rights.

206.    Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials was intentional and demonstrates the Defendants acted with

actual malice and with a specific intent to harm Plaintiff's State constitutional rights in an egregious way.

207.   Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials demonstrate further unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints and their dislike of his stated grievances.

208.   Defendant Cecil County, Maryland is liable for the acts of Defendants McCarthy, Allison, Meffley, Wein, Sniadowski, and Miller on the theory of *respondeat superior.*

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Alan McCarthy, Jason Allison, Robert Meffley, Alfred Wein, Deborah Sniadowski, Brian F. Miller, and Cecil County, Maryland, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

COUNT XIII
DECLARATORY JUDGMENT RELIEF
(All Defendants)
28 U.S.C. § 2201

209.   Plaintiff incorporates the previous allegations in paragraphs 1 through 57 as if set forth herein verbatim.

210.   On July 18, 2018, Defendant McCarthy, Defendant Wein and the Cecil County Council adopted a written communication plan entitled "Cecil County Government Communication Plan," a copy of which is attached as **Exhibit 3**.

211.   In its discussion of Cecil County Facebook pages, the Communication Plan states in relevant part:

Cecil County Government reserves the right to monitor and remove any content at any time for any reason at its sole, subjective discretion.  Comments, opinions,

advice, statements, discussion posts, wall posts, and any other user-generated content that is deemed inappropriate by Cecil County Government will be removed from the page.

**Exhibit 3**, pg.17.

212. The Communication Plan provides further that, "If an individual continually posts prohibited or offensive material, the Cecil County Government may exercise its right to block that individual from posting content onto the Cecil County Facebook Page." **Exhibit 3**, pg.18.

213. These provisions of the Cecil County Communications Plan, as currently drafted, constitute official written policies that are contrary to citizen's rights protected by the First and Fourteenth Amendments to the United States Constitution and also by Article 40 of the Maryland Declaration of Rights.

214. The policy purports to permit Cecil County officials "to monitor and *remove* any content at any time *for any reason* at its *sole, subjective* discretion" without regard to important constitutional restrictions applicable to Cecil County officials that prohibit government censorship and viewpoint discrimination.

215. The policy further purports to allow Cecil County officials to "remove" or censor from County social media pages any "[c]omments, opinions, advice, statements, discussion posts, wall posts, and any other user-generated content that is *deemed* inappropriate by Cecil County Government" without regard to the constitutional safeguards that prohibit governmental censorship and viewpoint discrimination like that described in this Complaint.

216. The policy also permits County Officials to "block" members of the public from County social media cites anytime officials subjectively deem posted material to be "prohibited or offensive." The government censoring speech because it is offensive or because officials dislike the message is the very definition of viewpoint discrimination that is constitutionally condemned in all fora.

217.    For the reasons stated, the Cecil County Communications Plan contains official written policies that are, on their face, unconstitutional.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment declaring the aforesaid written policies to be unconstitutional, null and void.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on Counts I through XII of this Complaint.  Count XIII should be decided by the United States District Court.

October 16, 2020                                     Respectfully Submitted,


/s/Ray M. Shepard
Ray M. Shepard, CPF #9112190158
     District Court Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law