**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Vincent S. Sammons<br>25 Beaver Court<br>Rising Sun, MD 21911<br><br>       PLAINTIFF,<br>v.<br><br>Alan J. McCarthy<br>200 Chesapeake Blvd., Suite 2100<br>Elkton, MD 21921<br><br>-and-<br><br>Alfred C. Wein Jr.<br>200 Chesapeake Blvd., Suite 2100<br>Elkton, MD 21921<br><br>-and-<br><br>Jason L. Allison<br>200 Chesapeake Blvd., Suite 2100<br>Elkton, MD 21921<br><br>-and-<br><br>Jennifer R. Lyall<br>200 Chesapeake Blvd., Suite 2100<br>Elkton, MD 21921<br><br>-and-<br><br>Maggie D. Tome<br>200 Chesapeake Blvd., Suite 2100<br>Elkton, MD 21921<br><br>-and-<br><br>Robert Meffley<br>200 Chesapeake Blvd., Suite 2100<br>Elkton, MD 21921<br><br>-and | <br><br><br><br><br><br><br><br><br><br><br><br><br>CIVIL ACTION No.:  1:20-cv-03010-ELH<br><br><br>JURY TRIAL DEMANDED |

Brian F. Miller
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

-and-

Cecil County, Maryland
200 Chesapeake Blvd., Suite 2100
Elkton, MD 21921

DEFENDANTS.

## AMENDED COMPLAINT

NOW COMES the Plaintiff, Vincent S. Sammons, by and through his attorney, Ray M. Shepard and The Shepard Law Firm and pursuant to 42 U.S.C. §§ 1983 and 1988 and Article 40 of the Maryland Declaration of Rights, does hereby sue the Defendants, Alan J. McCarthy, Alfred C. Wein Jr., Jason L. Allison, Jennifer R. Lyall, Maggie D. Tome, Robert Meffley, and Cecil County, Maryland, for violations of his rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article 40 of the Maryland Declaration of Rights. In support of his causes of action, Mr. Sammons alleges as follows:

PARTIES

1.       Plaintiff Vincent S. Sammons is a citizen of the United States residing in Rising Sun, Cecil County, Maryland.

2.       Defendant Alan J. McCarthy was at all relevant times the elected County Executive for Cecil County, Maryland. Defendant McCarthy's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant McCarthy is sued in both his individual and official capacities.

2

3.      Defendant Alfred C. Wein Jr. was at all relevant times the Director of Administration for Cecil County, Maryland.  Defendant Wein's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921. Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Wein is sued in both his individual and official capacities.

4.       Defendant Jason L. Allison was at all relevant times the attorney for Cecil County, Maryland.  Defendant Allison's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.   Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Allison is sued in both his individual and official capacities.

5.      Defendant Jennifer L. Lyall was at all relevant times the Public Information Officer ("PIO") for Cecil County, Maryland.  As PIO, Lyall's job includes coordinating all of the County's social media accounts and she therefore has administrative rights over all County Facebook pages and all County websites. Defendant Lyall's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Lyall is sued in both her individual and official capacities.

6.      Defendant Maggie D. Tome was at all relevant times a Unified Communications Specialist for Cecil County, Maryland.  Defendant Tome's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Tome is sued in both her individual and official capacities.

7.      Defendant Robert Meffley was at all relevant times President of the County Council for Cecil County, Maryland.  Defendant Meffley's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Meffley is sued in both his individual and official capacities.

8.      Defendant Brian F. Miller was at all relevant times the Director of Information Technology for Cecil County, Maryland.  Defendant Miller's public office is maintained within the County Administration Building, 200 Chesapeake Blvd., Elkton, Maryland 21921.  Regarding Plaintiff's federal constitutional claims alleged herein, Defendant Miller is sued in both his individual and official capacities.

9.      Defendant, Cecil County, Maryland is a body corporate and politic, having all the rights and powers of local self-government and home rule as are now or may hereafter be provided or necessarily implied by the Cecil County Charter, the Maryland Constitution and laws of the State of Maryland.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1985 and 1986.

11.      This Court has supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(a).

12.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in the district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

4

13.    In 2015, Defendant Alan McCarthy was campaigning to be elected as the Cecil County Executive.  At that time, McCarthy maintained a personal Facebook Page, which he still has: https://www.facebook.com/alan.mccarthy.775. *See also* **Exhibit 1.**  In connection with his campaign, McCarthy created a second Facebook page on November 2, 2015, which he called the "Dr. McCarthy for Cecil County Executive" Facebook page.  **Exhibit 2, pg. 4-5.**  On November 16, 2015, McCarthy changed the name of his campaign Facebook page to include his first name, and the page became the "Dr. Alan McCarthy for Cecil County Executive" Facebook page.  *Id.*

14.    In November 2016, Defendant Alan McCarthy was elected as Cecil County Executive.  The Cecil County Charter provides that the County Executive "shall be the chief executive officer of the County and shall faithfully execute the laws" and that all "executive power vested in the County by the Constitution and laws of Maryland and this Charter shall be vested in the Executive."

15.    On November 17, 2016, McCarthy changed the name of his former campaign Facebook page to the "Dr. Alan McCarthy Cecil County Executive – Elect." Facebook page. **Exhibit 2, pg. 4-5.**

16.    After taking office as the County Executive, Defendant McCarthy again changed the name of his second Facebook page to the "Dr. Alan McCarthy Cecil County Executive" Facebook page (hereinafter the "Cecil County Executive Facebook Page"). *Id.*  Screenshots of the Cecil County Executive Facebook Page are attached to this Complaint as **Exhibit 3**.

17.    Defendant McCarthy clothed his Cecil County Executive Facebook Page in the power and prestige of his public office.  For example, the Cecil County Executive Facebook Page contained the official copyrighted County seal and logo of Cecil County and was labeled with McCarthy's position in office, *i.e.*, "Cecil County Executive."  **Exhibit 3.**

18.     Aspects of the Cecil County Executive Facebook Page bear the hallmarks of a public forum.   Defendant McCarthy used the Cecil County Executive Facebook Page to communicate with his Cecil County constituents, to announce news relevant to the Cecil County community, to alert his constituents to his accomplishments and activities as County Executive and to otherwise conduct official business as County Executive.   For example, on February 3, 2020, a post from the Cecil County Government Facebook page was posted in the Cecil County Executive Facebook Page announcing, "County Executive to Hold Citizen Input Session for FY21 Budget #FY2021 #Cecil County https://uqfh5.app.goo.gl/yag2." **Exhibits 3, pg. 6** and **15.**   As another example, the Cecil County Executive Facebook Page alerted constituents on May 21, 2020 that, "This week the County Council passed historic tax relief for seniors and veterans.  This was just the first step in our approach to the economic damage caused by the coronavirus shutdown. Together we will emerge from this crisis stronger than ever!" **Exhibit 3, pg. 13.**

19.     In addition to conducting county business, the Cecil County Executive Facebook Page was open to the public and contained an interactive section that allowed members of the public to communicate with each other and with McCarthy, to post comments, comment on posts made by others and like or dislike other people's posts.  McCarthy placed no restrictions on the public's access to the Cecil County Executive Facebook Page or use of its interactive component. Additionally, the owner and/or administrator(s) of the Cecil County Executive Facebook Page had the ability to delete posts and to block members of the public from having access to the interactive component of the page or to the Cecil County Executive Facebook Page altogether.

20.     On July 18, 2018, Defendant McCarthy, Defendant Wein and the Cecil County Council adopted a written communication plan entitled "Cecil County Government Communication Plan," a copy of which is attached as **Exhibit 4**.

21.    In its discussion of Cecil County Facebook pages, the Communication Plan states in relevant part:

> Cecil County Government reserves the right to monitor and remove any content at any time for any reason at its sole, subjective discretion. Comments, opinions, advice, statements, discussion posts, wall posts, and any other user-generated content that is deemed inappropriate by Cecil County Government will be removed from the page.

**Exhibit 4, pg.17**.

22.    The Communication Plan provides further that, "If an individual continually posts prohibited or offensive material, the Cecil County Government may exercise its right to block that individual from posting content onto the Cecil County Facebook Page." **Exhibit 4, pg.18**.

23.    The Communication Plan prohibits use of the copyrighted Cecil County seal or any other County images or iconography on personal social media sites. **Exhibit 4, pg.15(4)**.

24.    In 2019, it became clear that County Executive McCarthy would face challengers in the Republican 2020 primary election, one of whom would be Danielle Hornberger.

25.    From in or about January 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page. Many of Sammons' posts alleged McCarthy's involvement in public corruption committed through the Cecil Business Leaders Political Action Committee, which collected large donations from area builders and other businesses who then received kickbacks in the form of favorable treatment from the County in things like zoning and licensing determinations.

26.    Beginning in or about February 2019, Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate— were deleted and Plaintiff Sammons was blocked from making further posts and blocked from

interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

27.    Because of her position as Cecil County's Public Information Officer, Defendant Lyall shared administrative rights with McCarthy regarding the Cecil County Executive Facebook Page.  The evidence available demonstrates that Jackson Leith, who worked under Defendant Lyall as an intern for Cecil County, also had administrative rights to the Cecil County Executive Facebook Page and made posts to the Cecil County Executive Facebook Page.  *See* **Exhibit 3.** Defendant McCarthy, Defendant Lyall, or an employee acting at her direction, would have been responsible for deleting Plaintiff's posts and blocking Plaintiff from accessing the Cecil County Executive Facebook Page.

28.    On April 27, 2019, Plaintiff Sammons sent an email to Defendant McCarthy complaining that McCarthy's blocking of Plaintiff's posts—which had been in place "for quite some time"—was in violation of his First Amendment free speech rights.  **Exhibit 5.**  On that same day, Plaintiff Sammons forwarded the same email to Defendant Jason Allison.  *Id.*

29.    On April 29, 2019, Defendant Allison responded to Plaintiff Sammons' email asserting incorrectly that Plaintiff had blocked McCarthy from the Cecil County Executive Facebook Page and therefore the problem was with Plaintiff, not McCarthy.  **Exhibit 2_.**  Plaintiff Sammons then clarified the difference between McCarthy's personal Facebook page, which Plaintiff had blocked, and the Cecil County Executive Facebook Page, which Plaintiff had not blocked.  *Id.*  Defendant Allison later informed Plaintiff Sammons that after speaking with McCarthy on two separate occasions, "McCarthy [was] adamant that [Plaintiff] ha[s] not been blocked on any of his Facebook pages; however, upon further investigation by Defendant Allison, he informed Plaintiff Sammons on April 30, 2019 that "you now have full access to the Facebook

page "Dr. Alan McCarthy Cecil County Executive." *Id.* This evidence demonstrates that both McCarthy and Allison had oversight and control over the Cecil County Executive Facebook Page.

30.    Plaintiff Sammons' restored "full access" to the Cecil County Executive Facebook Page would be short-lived. By the fall of 2019, with the election getting closer, Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—were again deleted from the Cecil County Executive Facebook Page and Plaintiff Sammons was again blocked from making further posts and again blocked from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

31.    On December 10, 2019, Plaintiff Sammons sent another email to Defendants McCarthy and Allison complaining that he was again being denied access to the Cecil County Executive Facebook Page. **Exhibit 6.** Specifically, Sammons complained that he was being denied access to the interactive section of the Facebook page effectively preventing him from posting his views on the Page and interacting with other constituents. *Id.*

32.    Although Plaintiff Sammons' December 10, 2019 email complaint concerned access to the same Cecil County Executive Facebook Page that he had been blocked from in the Spring of 2019, and to which he had "full access" restored to him on April 30, 2019, Defendant Allison this time refused to acknowledge that the Cecil County Executive Facebook Page remained a "County social media site." *Id.* Rather, Allison claimed, the Cecil County Executive Facebook Page "is a social media site affiliated with Dr. McCarthy's campaign" and "[a]s such, we have no jurisdiction to act on your demand" to have access once again restored. *Id.* Defendant Allison knew his representations were false, and that the Cecil County Executive Facebook Page continued to bear the hallmarks of an official County Facebook page subject to the County's jurisdiction and control. Defendant Allison made this misrepresentation purposefully to continue to deny Plaintiff

Sammons access to the Cecil County Executive Facebook Page in violation of Sammons' free speech rights.

33.  Despite Defendant Allison's misrepresentation, in December 2019 and in 2020, the Cecil County Executive Facebook Page continued to be called the "Dr. Alan McCarthy Cecil County Executive" Facebook page. The Cecil County Executive Facebook Page continued during this time to use Cecil County Government telephone numbers for constituents to call regarding public matters, for example "(410) 996-5203" (*See* **Exhibit 3, pg. 17**), which has long been used by Cecil County Government. *See* **Exhibit 7.** The Cecil County Executive Facebook Page also continued to use McCarthy's official government email address, "amccarthy@ccgov.org" to allow constituents to email the County Executive regarding any matters of public concern. **Exhibit 3, pg. 17.** In addition, Cecil County employees were used to post items on the Cecil County Executive Facebook Page. For example, on May 16, 2020, May 24, 2020, May 29, 2020, May 31, 2020 and June 1, 2020, Cecil County employee Jackson Leith posted articles to the Cecil County Executive Facebook Page. *See* **Exhibits 3** and **8** (indicating Mr. Leith was hired by Cecil County in July 2019 as a County Council Intern); *see also* **Exhibit 9** (identifying Mr. Leith as a "Special Intern to the County Executive"). Defendant McCarthy also continued to use the Cecil County Executive Facebook Page during this time to communicate with his Cecil County constituents, to announce news relevant to the Cecil County community, to alert his constituents to his accomplishments and activities as County Executive and to otherwise conduct official business as County Executive. *See infra* ¶ 18.

34.  On May 12, 2020, while Plaintiff Sammons continued to be denied access to the Cecil County Executive Facebook Page, including its interactive features, a public budget meeting was held virtually by the Cecil County Council because of the Corona Virus pandemic. Members

of the public and some members of Cecil County government participated by Zoom Meeting. During the meeting, participants were able to see other participants in separate windows on their computer screens and were able to have real time voice communications.

35.     Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made.  The three signs read: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."  *See* **Exhibit 10.**    The first sign, "McCarthy Stop Blocking Me on Facebook," was clearly intended as a grievance and the First Amendment "protects the right 'to petition the Government for a redress of grievances.'" *Martin v. Duffy,* 858 F.3d 239, 249 (4th Cir. 2017)(quoting *Kirby v. City of Elizabeth City,* 388 F.3d 440, 448 (4th Cir. 2004) and U.S. Const. Amend. I).  The second and third signs, "Vote for Hornberger" and "No More Tax Increases" were both purely political speech and relevant to the County's budget discussions.

36.     As the meeting progressed, Plaintiff Sammons' video feed loop was intentionally blocked while other video feeds, such as one stating, "Yes to Southfields," were allowed to remain up and visible to all meeting participants during the entire meeting.

37.     When Plaintiff Sammons' video feed was blocked during the May 12, 2020 budget meeting, Mr. Sammons received the following message on his computer screen: "You cannot start your video because the host has stopped it."  **Exhibit 11.**

38.     The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website.  The recording may be viewed by navigating to the following  link:  https://www.ccgov.org/Home/Components/Calendar/Event/8846/20  and  then selecting the "Audio/Video" link on the page.  The video recording is also attached as **Exhibit 12.**

39.     At 00:25 seconds into the video, the screen shows Plaintiff Sammons signed into the meting as "VSAMMONS."  The meeting begins at 15:53 into the recording, at which point Jim Massey, Manager of the Cecil County Council, opens the meeting with welcoming remarks. Defendant Maggie Tome is seen sitting opposite of Massey at a conference table with a laptop computer.  With Tome is Terry Hale, a Cecil County Council administrative assistant.  Defendant Robert Meffley, President of the Cecil County Council, participated in the meeting from his home and ran the County Council meeting.  At 25:15 into the recording, Meffley invites County Executive McCarthy to make comments regarding the proposed budget and McCarthy begins speaking at 25:30 into the recording.  The video show McCarthy speaking from a podium and Defendant Alfred Wein, Jr. sitting behind McCarthy.

40.     After McCarthy speaks about the proposed budget, Meffley calls for public comments and describes the process starting at 34:31 into the recording.  At 44:00 into the recording, Meffley instructs Massey to "make sure that everybody mutes their mic[rophone] when somebody's talking, the first two people you couldn't hear very well."  Massey responds that, "we can do that from our side" at 44:13.  From this point on, microphones were muted by the host of the meeting and individual participants could be heard only if both the host and the participant had the participant's microphone "unmuted."  Danielle Hornberger—McCarthy's challenger in the Republican Primary—was invited to speak about the proposed budget at 52:11 into the meeting.

41.     At 1:05:53 into the meeting, Massey calls out Plaintiff Sammons' name for comment, however, the host did not unmute Plaintiff Sammons' microphone when his name was called, and Plaintiff was denied any opportunity to speak.  During the approximate eight seconds he was awaiting a response from Plaintiff Sammons, Massey's facial expression changed, and he

12

appears on the video to grimace or frown just before calling the next person's name.  This was the only opportunity Plaintiff received to speak during the Council Budget Meeting.

42.    At 1:21:35 into the meeting, Defendant Alfred Wein Jr. is observed entering the conference room where Massey, Defendant Tome and Hale are sitting through a door that separates the conference room from that immediately adjacent, where Defendant Wein and Defendant McCarthy were sitting together during the meeting.  Although not captured by the recording, Plaintiff Sammons observed Defendants McCarthy and Wein talking just before Wein is seen entering the the adjacent conference room.  The recording shows Defendant Wein then walked across the conference room to where Defendant Tome was sitting and the two had an off-the-record conversation.  During the conversation between Wein and Tome, Ms. Hale can been seen in the recording to have the laptop mouse in her left hand.  *See* **Exhibit 12** at 1:21:58. Immediately after the conversation between Wein and Tome, however, Tome is seen with the laptop mouse in her right hand and she is taking some action with regards to the meeting.  *Id.* at 1:22:17. Wein stays in the room until Tome is finished using the laptop mouse, then he returns to the adjacent room. At this time, Plaintiff Sammons' video feed was turned off and the following message was displayed on Sammons' computer screen: "Meeting Alert … You cannot start your video because the host has stopped it." *See* **Exhibit 11_.**  Plaintiff Sammons, watching the meeting via Zoom, observed these events as they occurred.  Based upon the timing of the Meeting Alert Plaintiff received regarding termination of his video feed, a reasonable inference is that Wein instructed Tome to delete Plaintiff's video feed, which was displaying Plaintiff's three signs described *infra.* Further, it is reasonable to infer from McCarthy's conversation with Wein immediately before Wein enters the adjacent conference room that McCarthy instructed Wein to have Sammons' video feed turned off or blocked.

43.     After Plaintiff's video feed was blocked and he remained muted by the meeting host, Plaintiff believed reasonably that he would be unable to participate in the meeting further and accordingly he left the Zoom meeting angry and in disgust with the manner in which he was treated.

44.     The following day, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, stating in part as follows:

> I was very disappointed on the abuse of technology to subdue my freedom of speech and the opportunity to interject and speak about the pending budget. I and others have been blocked from the County Executive social media page [and] I have officially communicated to the county twice on this matter[.] The first time the county attorney corrected it and the second time he made some lame legal opinion on why he [McCarthy] can block others. To this day I remain[] blocked from commenting and correcting the County Executive on his false messages to the public while his cheerleaders sing him praise.

> Nevertheless, last night I wanted to speak out on how embarrassed I was to call these elected official[s] Republicans due to their liberal tax and spend policies and I did not want the taxes to go up yet again. I also had a video feed up during the meeting that had several signs made that reflected my opinions on this that was later silenced as McCarthy did not like the fair but negative messaging. Meanwhile, [t]he "YES to Southfields" video feed was allowed to continue throughout the online session. I was "given an opportunity" to speak last night however my mic was open so briefly [that by] the time I unmuted my mic the "opportunity" was over. . . .

> In closing, I would like for the county Executive to UNBLOCK EVERYONE (not only me) and be allowed to have our voices back and give him the criticism he is deserving of on his tax and spend policies.

**Exhibit 13.**

45.     On May 18, 2020, having received no response to his grievance, Plaintiff Sammons sent another email to Massey and the Cecil County Council.  This time, Plaintiff Sammons copied

Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news.  The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

**Exhibit 13.**

46.    After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda. You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials." **Exhibit 13.**

47.    Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint." **Exhibit 13.**

48.    In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

> No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

**Exhibit 13.**

49.     Defendant Allison appears to harbor significant animus towards Plaintiff Sammons. Later, on the night of May 19, 2020, at 11:15 pm, Defendant Allison emailed Plaintiff Sammons from home, stating: "Man, you're a Mitch.[1]  You bloviate all over social media and then, when called to the carpet, you make your FB page private?  HAHAHAHAH, you're a hypocrite and a coward of the first degree.  I pity you.  This is a private communication – you're acting like a bottom feeder.  I know you're better than this.  Get a grip, Sir."  **Exhibit 14.**   This evidence suggests strongly that Defendant Allison's actions against Plaintiff as alleged herein were motivated by evil motive or evil intent against Plaintiff, and that Allison acted intentionally with a callous indifference to Plaintiff's Constitutional rights.

LEGAL FRAMEWORK

### A.   Federal Claims

50.     The First Amendment of the United States Constitution guarantees, among other fundamental rights, Plaintiff's right to free speech and Plaintiff's right to petition the government for redress of grievances.

51.     At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern.  "The freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50-51 (1988).  "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and

---

[1] According to the Urban Dictionary, a "Mitch" is a male "Bitch."  Plaintiff believes the "b" in the ending phrase of the earlier email that day from Allison, "Bye bye. b" also meant "bitch."

then, after reflection, speak and listen once more." *Packingham v. North Carolina,* 137 S.Ct. 1730, 1735 (2017).

52.     The Supreme Court of the United States has long recognized that, "[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures." *Falwell,* 485 U.S. at 51-52 (quoting *Baumgartner v. United States,* 322 U.S. 665, 673-674 (1944)).  It is clearly established that "[t]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Comm'n,* 572 U.S. 185, 203 (2014).  "The sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of those who hold public office or those public figures who are intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large."  *Hustler Magazine, Inc.,* 485 U.S. at 51.

53.     The Supreme Court "has sought to protect the right to speak in [a] spatial context." A basic rule, for example, "is that a street or a park is a quintessential forum for the exercise of First Amendment rights."  *Packingham,* 137 S.Ct. at 1735 (citing *Ward v. Rock Against Racism,* 491 U. S. 781, 796 (1989)).  "Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire." *Id.*

54.     "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace— the 'vast democratic forums of the Internet' in general, *Reno v. American Civil Liberties Union*, 521 U. S. 844, 868 (1997), and social media in particular." *Packingham,* 137 S.Ct. at 1735.

55.     Social media platforms that permit the free exchange of ideas, such as Facebook and the Cecil County Executive Facebook Page, are modern-day equivalents to streets or a park,

and are subject to traditional public forum analysis for First Amendment purposes. *Davison v. Randall,* 912 F.3d 666, 682 (4th Cir. 2019).

56. Official censorship based on a government actor's subjective judgment that the content of protected speech is offensive or inappropriate is unconstitutional "viewpoint discrimination." *Matal v. Tam,* 137 S.Ct. 1744, 1763 (2017). Viewpoint discrimination is an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 828 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 (1983). In other words, discrimination against speech because of its message is presumed to be unconstitutional.

57. Viewpoint discrimination is prohibited in all forums, including a limited or designated public forum, and "is apparent, for example, where a government official's decision to take a challenged action was 'impermissibly motivated by a desire to suppress a particular point of view.'" *Davison v. Randall,* 912 F.3d 666, 687 (4th Cir. 2019)(citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 802 (1985)).

58. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution commands that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). When, as occurred in this case, an equal protection violation arises from a First Amendment violation, the two claims are "fused" together. *Hardwick v. Heyward,* 711 F.3d 426, 442 (4th Cir. 2013)(citing *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 384-85 n.4 (1992)).

59. Federal statutory law permits Plaintiff to bring a private cause of action to redress violations of his rights guaranteed by the Bill of Rights in the United States Constitution.

Specifically, 42 U.S.C. § 1983 provides in pertinent part that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . ."

60.     To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant "under color of . . . state law." *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49 (1988)(quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). Section 1983's "color-of-law prerequisite is synonymous with the more familiar state-action requirement" applicable to Fourteenth Amendment claims, "and the analysis for each is identical." *Pitt Cty. Mem'l Hosp.,* 572 F.3d at 180. Both inquiries demand that "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Holly v. Scott,* 434 F.3d 287, 292 (4th Cir. 2006)(quoting *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937 (1982)).

61.     Congress has also provided that in an action such as this one to enforce a provision of Title 42, Section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . ." *See* 42 U.S.C. § 1988(b). The Court may also include expert witness fees when awarding attorney's fees. 42 U.S.C. § 1988(c).

19

62.     As used in 42 U.S.C. § 1983 the term "person" includes all individual Defendants in this action.  Defendant Cecil County, Maryland, is also a "person" within the meaning of this statute.  *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1977*).*

### B.   State Law Claims

63.     In addition to the federal legal framework discussed *infra,* Article 40 of the Maryland Declaration of Rights provides State Constitutional protections coextensive with the First Amendment of the United States Constitution.  *DiPino v. Davis,* 354 Md. 18, 43, 729 A.2d 354, 367 (1999)(citing *Jakanna v. Montgomery County,* 344 Md. 584, 689 A.2d 65 (1997)).

64.     Although the rights protected by Article 40 of the Maryland Declaration of Rights are coextensive with the rights protected under the First Amendment of the United States Constitution, the legal analysis of State Constitutional torts differs substantially from the legal analysis applicable to claims asserted under 42 U.S.C. § 1983.  First, unlike federal claims brought under Title 42, and unlike some common law torts, "neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution."  *DiPino,* 354 Md. at 51; *Ritchie v. Donnelly,* 324 Md. 344, 373-74, 597 A.2d 432, 446 (1991).

65.     Second, the "personal/official capacity distinction applied in § 1983 actions" does not apply when considering State Constitutional claims.  *DiPino,* 354 Md. at 51.  The Maryland Court of Appeals has explained:

> This Court has consistently held that a public official who violates the plaintiff's rights under the Maryland Constitution is personally liable for compensatory damages. . . . This liability for damages resulting from unconstitutional acts is in no way based upon the 'official/individual capacity' body of law which has developed in federal § 1983 claims. Liability has been imposed upon the government official when his unconstitutional actions were in accordance with or dictated by governmental policy or custom. Liability has also been imposed when the unconstitutional acts were inconsistent with governmental policy or custom.

20

Moreover, contrary to the view of the circuit court in the present case, liability has been imposed upon the official when he was acting in the scope of his employment.

*Ritchie,* 324 Md. at 370-71, 597 A.2d at 445 (internal citations omitted).

66.     Finally, "[a] third difference hinges on the existence of *respondeat superior* liability on the part of local governmental entities for State Constitutional violations. There is no such vicarious liability under § 1983, because of the distinction drawn between personal and official capacity actions." *DiPino,* 354 Md. at 51.  The Court of Appeals went on to say that, "We shall now dispel any doubt in the matter and make clear, as a matter of common law, that local governmental entities do, indeed, have *respondeat superior* liability for civil damages resulting from  State Constitutional violations committed by their agents and employees within the scope of the employment."

67.     The Local Government Tort Claims Act ("LGTCA") provides that a local government entity "shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government."  Md. Courts & Jud. Proc. Code § 5-303(b).

68.     A local government's liability is limited under the LGTCA to a maximum of $400,000 per individual claim, and $800,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions. Md. Courts & Jud. Proc. Code § 5-303(a).

69.     Subject to the aforesaid damage caps, "a local government may indemnify an employee for a judgment for punitive damages entered against the employee," however, the local government itself may not be liable for punitive damages. Md. Courts & Jud. Proc. Code § 5-303(c).  The local government entity may not assert governmental or sovereign immunity to avoid its duty to defend or indemnify an employee.  Md. Courts & Jud. Proc. Code § 5-303(b)(2).

70.     On October 8, 2020, Plaintiff provided notice of his claims alleged herein to the County Council of Cecil County, Maryland pursuant to Md. Courts & Jud. Proc. Code § 5-304(b). *See* **Exhibit 16.**

71.     With respect to Plaintiff's federal claims alleged below, all individual defendants are sued in both their personal and official capacities, and the local government defendant is not separately named.  A claim against a public official in their official capacity is equivalent to a claim against the municipality itself. *Davison v. Randall,* 912 F.3d 666, 688 (4th Cir. 2019)(additional citations omitted); *Hafer v. Melo,* 502 U.S. 21, 25 (1991)(official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.")(quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

72.     With respect to Plaintiff's federal claims alleged below, no defendant is entitled to qualified immunity because viewpoint discrimination, as alleged in this case, is presumed impermissible in any forum under any analysis.  *Rosenberger v. Rector and Visitors of University of Virginia,* 515 U.S. 819, 828 (1995); *Davison v. Randall,* 912 F.3d 666, 687 (4th Cir. 2019).

COUNT I
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY EXECUTIVE FACEBOOK PAGE
(Defendants: Jennifer Lyall, Jason Allison, and Alan McCarthy)
42  U.S.C. § 1983

73.     Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

74.     Defendants Lyall, Allison and McCarthy created, administered and/or managed the Cecil County Executive Facebook Page.

75.     The Cecil County Executive Facebook Page was open to the public for the exchange of political ideas and discussion, both with County Executive McCarthy and other

22

members of the public, was used by McCarthy to communicate with his constituents as County Executive and was used to otherwise conduct the business of Cecil County. The Cecil County Executive Facebook Page contained the official seal and logo of Cecil County government and identified the page as "The Dr. Alan McCarthy County Executive" Facebook Page. The interactive portions of the Cecil County Executive Facebook Page constituted a public forum.

76. From in or about January 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

77. Defendants Lyall, Allison and/or McCarthy, acting under color of state law, deleted or caused to be deleted Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

78. Defendants Lyall, Allison and/or McCarthy, continuing to act under color of state law, blocked Plaintiff Sammons from making further posts on the Cecil County Executive Facebook Page and blocked Plaintiff Sammons from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page on two separate and independent occassions.

79. In their acts of deleting Plaintiff's posts and blocking Plaintiff's access to the Cecil County Executive Facebook Page, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax and other policies.

80.     By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

81.     By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

82.     Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First and Fourteenth Amendments when they deleted Plaintiff's posts from the Cecil County Executive Facebook Page and blocked him from the public forum.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Lyall, Allison and McCarthy, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT II
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM PUBLIC BUDGET MEETING
(Defendants: Alan McCarthy, Alfred Wien, Maggie Tome and Robert Meffley)
42 U.S.C. § 1983

83.      Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

84.     On May 12, 2020, the Cecil County Council, with participation from the County Executive, Defendant McCarthy, held a public budget meeting conducted virtually via Zoom Meeting.

85.     Pursuant to the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* the Cecil County budget meeting was open to the public and the citizens participating in the public meeting had the right to have notice of the meeting, the right to attend the meeting, and the right to participate in the public discussion of the proposed budget.

86.     The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website.  The recording may be viewed by navigating to the following link:  https://www.ccgov.org/Home/Components/Calendar/Event/8846/20  and then selecting the "Audio/Video" link on the page.  A copy of the recording is also attached as **Exhibit 12.**

87.     Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual Zoom window (which could be seen by other meeting participants) with a video feed loop displaying three signs he had made.  The three signs said: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."

88.     Defendants McCarthy, Wien, Tome and Meffley, acting under color of state law, intentionally blocked Plaintiff Sammons' video feed loop while other video feeds, such as one stating, "Yes to Southfields," were allowed to remain up and visible to all meeting participants during the entire meeting.

89.     When Plaintiff Sammons' video feed was blocked during the May 12, 2020 budget meeting, Mr. Sammons received the following message on his computer screen: "Meeting Alert - - You cannot start your video because the host has stopped it."

90.     Each Defendant's personal conduct contributed to the violation of Plaintiff's First Amendment rights.  Specifically, McCarthy instructed Wein to have Plaintiff's video feed shut off or blocked, Wein then walked into the adjacent conference room and directed Tome to shut off or block Plaintiff's video feed, which Tome did by taking control of the computer mouse and causing the Zoom Meeting program to shut off or block Plaintiff's video feed.  Meffley, as President of the Cecil County Council was in charge of the meeting, and Meffley was required by the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* to ensure Plaintiff's statutory and Constitutional rights to speak and participate in the meeting were not infringed.  Meffley watched the above conduct and therefore knew or should have known that Plaintiff's video feed disappeared immediately after Wein spoke with Tome, who was at that moment operating the Zoom Meeting as host, and Meffley also observed that Plaintiff Sammons was in the Zoom Meeting but unable to speak because the Zoom Meeting host had muted Plaintiff's microphone.

91.     Defendants McCarthy, Wien, Tome and Meffley, continuing to act under color of state law, also denied Plaintiff Sammons a reasonable opportunity to speak at the public budget meeting by unmuting or causing to be unmuted his Zoom connection for only a spilt second and then re-muting Plaintiff Sammons before he could speak or by not unmuting Plaintiff's microphone at all.

92.     In their acts of blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff

Sammons' viewpoints, which were critical of McCarthy's tax policies, advocated voting for one of McCarthy's primary opponents, and complained about being blocked from the Cecil County Executive Facebook Page.

93.     By blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of the First Amendment to the United States Constitution.

94.     Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by the First Amendment when they blocked Plaintiff's video feed and prevented Plaintiff Sammons from speaking during the public budget meeting.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Wien, Tome and Meffley, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT III
FIRST AMENDMENT VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY AGENCY EMAIL SYSTEMS
(Defendants: Alan McCarthy, Jason Allison, Brian Miller).
42 U.S.C. § 1983

95.     Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

96.     On May 13, 2020, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, including Defendant Meffley as President of the County Council, complaining about the treatment he had received at

27

the public budget meeting and about being blocked from the Cecil County Executive Facebook Page.

97.     On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council.  This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news.  The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

98.     After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda. You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials."

99.     Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."

100.    In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

> No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your

right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

101.    "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

102.    The First Amendment also "protects the right to petition the government for a redress of grievances." *Martin v. Duffy,* 858 F.3d 239, 249 (4th Cir. 2017).  The right to petition the government for a redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill State Bar Ass'n,* 389 U.S. 217, 222 (1967).

103.    On May 13, 2020 and again on May 18, 2020, when Plaintiff Sammons submitted his email grievances to Massey, Allison, Meffley and the entire Cecil County Council, Plaintiff was engaged in conduct protected by the First Amendment.  Plaintiff Sammons was likewise engaging in protected First Amendment conduct when he posted and attempted to communicate on the Cecil County Executive Facebook Page and when he attempted to participate in the public budget meeting on May 12, 2020.

104.    Burdens placed upon free speech, as well as outright bans, violate the First Amendment.  *See Sorrell v. IMS Health Inc.,* 564 U.S. 552, 566 (2011)(stating that government "may no more silence unwanted speech by burdening its utterance than by censoring its content"); *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 812 (2000)("The distinction between laws burdening and laws banning speech is but a matter of degree. The Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.").

105.    When the government has discriminated against a speaker based on the speaker's viewpoint, as occurred in this case, the victim's ability to engage in other speech does not cure that

constitutional shortcoming. *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. Of the Law v. Martinez,* 561 U.S. 661, 690 (2010).

106.   Defendant Allison's email responses to Plaintiff Sammons on May 19, 2020, in which Allison says he will "engage [Plaintiff Sammons] in war" and will "block [Plaintiff Sammons] from all communication with County agencies" constitutes unconstitutional retaliation for Plaintiff's exercise of protected activity under the First Amendment.  Defendant Allison was acting under color of state law when making these statements.

107.   Defendant Allison would not have engaged in such a course of action without informing and consulting with his boss, Defendant McCarthy, and receiving directives from McCarthy.

108.   Defendant Allison, acting at the direction of Defendant McCarthy and under color of state law, copied Defendant Brian Miller on his email dated May 19, 2020 in which Allison states to Plaintiff Sammons: "What I'm doing is blocking you from further communication via email. . . . You have the right to communicate with County government.  Your right is now restricted to paper and pen writing delivered via USPS."  An earlier email on the same day and in the same email chain expressly referenced the County's IT department: "At this point, I'm going to advise IT to block you from all communication with County agencies."

109.   As the Director of Information Technology ("IT") for Cecil County, Defendant Miller controlled the County's email system and had the requisite administrative credentials and technical knowledge to carry out the directive—from McCarthy and Allison—to ban Plaintiff from being able to email anyone within the Cecil County government.

110.   Defendant Miller followed the directive communicated by Allison and, from approximately May 19, 2020 until on or about June 15, 2020, caused all emails from Plaintiff

Sammons to any recipient within the Cecil County government to be blocked or redirected so that they never reached their intended recipients.

111.   Defendants' action of banning Plaintiff Sammons from communicating with government officials via email was committed under color of state law and constitutes a clear and egregious violation of his First Amendment rights.

112.   The fact that Plaintiff Sammons remained free to communicate with Cecil County government officials in other ways between May 19, 2020 and June 15, 2020—such as through the U.S. postal service—cannot excuse Defendants for violating Plaintiff Sammons' constitutional rights.

113.   Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials was intentional and demonstrates the Defendants acted with actual malice and with a specific intent to harm Plaintiff's constitutional rights in an egregious way.

114.   Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials demonstrate further unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints and their dislike of his stated grievances.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Allison and Miller, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by 42 U.S.C. § 1988.

COUNT IV
ARTICLE 40 VIEWPOINT DISCRIMINATION
BLOCKED FROM CECIL COUNTY EXECUTIVE FACEBOOK PAGE
(Defendants: Jennifer Lyall, Jason Allison, Alan McCarthy and Cecil County)

115. Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

116. Defendants Lyall, Allison and McCarthy created, administered and/or managed the Cecil County Executive Facebook Page.

117. At all relevant times, Defendants Lyall, Allison and McCarthy were employees of Defendant Cecil County, Maryland or were the agents of Cecil County, Maryland.

118. The Cecil County Executive Facebook Page was open to the public for the exchange of political ideas and discussion, both with County Executive McCarthy and other members of the public, was used by McCarthy to communicate with his constituents as County Executive and was used to otherwise conduct the business of Cecil County. The Cecil County Executive Facebook Page contained the official seal and logo of Cecil County government and identified the page as "The Dr. Alan McCarthy County Executive" Facebook Page. The interactive portions of the Cecil County Executive Facebook Page constituted a public forum.

119. From in or about January 2019 and continuing until in or about May 2020, Plaintiff Sammons posted several comments critical of McCarthy's tax policies and critical of Defendant McCarthy continuing to serve as Cecil County Executive on the Cecil County Executive Facebook Page.

120. Defendants Lyall, Allison and/or McCarthy, acting within the scope of their employment, deleted or caused to be deleted Plaintiff Sammons' posts critical of McCarthy's policies and of McCarthy himself—none of which were obscene or inappropriate—because they did not like Sammons' viewpoint.

121.    Defendants Lyall, Allison and/or McCarthy, acting within the scope of their employment, blocked Plaintiff Sammons from making further posts on the Cecil County Executive Facebook Page and blocked Plaintiff Sammons from interacting with McCarthy and other citizens of Cecil County on the Cecil County Executive Facebook Page.

122.    In their acts of deleting Plaintiff's posts and blocking Plaintiff's access to the Cecil County Executive Facebook Page, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax and other policies.

123.    By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of Article 40 of the Maryland Declaration of Rights.

124.    By deleting Plaintiff's posts and blocking Plaintiff from access to the Cecil County Executive Facebook Page, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression without due process of law in violation of Article 24 of the Maryland Declaration of Rights.

125.    Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his rights and freedoms protected by Articles 40 and 24 of the Maryland Declaration of Rights when they deleted Plaintiff's posts from the Cecil County Executive Facebook Page and blocked him from the public forum.

126.    Defendant Cecil County, Maryland is liable for the acts of Defendants Lyall, Allison and McCarthy on the theory of *respondeat superior.*

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Lyall, Allison, McCarthy and Cecil County Maryland, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

COUNT V
ARTICLE 40 VIEWPOINT DISCRIMINATION
BLOCKED FROM PUBLIC BUDGET MEETING
(Defendants: Alan McCarthy, Alfred Wien,
Maggie Tome, Robert Meffley
and Cecil County)

127.    Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

128.    On May 12, 2020, the Cecil County Council, with participation from the County Executive, Defendant McCarthy, held a public budget meeting conducted virtually via Zoom Meeting.

129.    Pursuant to the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* the Cecil County budget meeting was open to the public and the citizens participating in the public meeting had the right to have notice of the meeting, the right to attend the meeting, and the right to participate in the public discussion of the proposed budget.

130.    The May 12, 2020 Cecil County open budget meeting was recorded and is archived on the Cecil County Government's website.  The recording may be viewed by navigating to the following link:  https://www.ccgov.org/Home/Components/Calendar/Event/8846/20  and then selecting the "Audio/Video" link on the page.  A copy of the recording is also attached as **Exhibit 12.**

131.    Plaintiff Sammons participated in the public budget meeting on May 12, 2020. During the meeting, Plaintiff Sammons filled his virtual Zoom window (which could be seen by

34

other meeting participants) with a video feed loop displaying three signs he had made.  The three signs said: (1) "McCarthy Stop Blocking Me on Facebook," (2) "Vote for Hornberger" and (3) "No More Tax Increases."

132.    Defendants McCarthy, Wien, Tome and Meffley, acting within the scope of their employment or agency with Defendant Cecil County, Maryland, intentionally blocked Plaintiff Sammons' video feed loop while other video feeds, such as one stating, "Yes to Southfields," was allowed to remain up and visible to all meeting participants during the entire meeting.

133.    When Plaintiff Sammons' video feed was blocked during the May 12, 2020 budget meeting, Mr. Sammons received the following message on his computer screen: "Meeting Alert - - You cannot start your video because the host has stopped it."

134.    Each Defendant's personal conduct contributed to the violation of Plaintiff's rights under Article 40 of the Maryland Declaration of Rights.  Specifically, McCarthy instructed Wein to have Plaintiff's video feed shut off or blocked, Wein then walked into the adjacent conference room and directed Tome to shut off or block Plaintiff's video feed, which Tome did by taking control of the computer mouse and causing the Zoom Meeting program to shut off or block Plaintiff's video feed.  Meffley, as President of the Cecil County Council was in charge of the meeting, and Meffley was required by the Maryland Open Meetings Act, Md. Gen. Prov. Code § 3-301, *et seq.,* to ensure Plaintiff's statutory and Constitutional rights to speak and participate in the meeting were not infringed.  Meffley watched the above conduct and therefore knew or should have known that Plaintiff's video feed disappeared immediately after Wein spoke with Tome, who was at that moment operating the Zoom Meeting as host, and Meffley also observed that Plaintiff Sammons was in the Zoom Meeting but unable to speak because the Zoom Meeting host had muted Plaintiff's microphone.

35

135.   Defendants McCarthy, Wien, Tome and Meffley, continuing to act within the scope of their employment or agency with Defendant Cecil County, Maryland, also denied Plaintiff Sammons a reasonable opportunity to speak at the public budget meeting by unmuting or causing to be unmuted his Zoom connection for only a spilt second and then re-muting Plaintiff Sammons before he could speak or by not unmuting Plaintiff's microphone at all.

136.   In their acts of blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints, which were critical of McCarthy's tax policies, advocated voting for one of McCarthy's primary opponents, and complained about being blocked from the Cecil County Executive Facebook Page.

137.   By blocking Plaintiff's video feed and blocking Plaintiff Sammons from speaking during the public budget meeting, the Defendants effectively denied Plaintiff of the ability to engage in the public debate and denied Plaintiff's ability to exercise his freedom of expression in violation of Article 40 of the Maryland Declaration of Rights.

138.   Defendants acted intentionally and with actual malice towards Plaintiff Sammons to deny his freedoms protected by Article 40 of the Maryland Declaration of Rights when they blocked Plaintiff's video feed and prevented Plaintiff Sammons from speaking during the public budget meeting.

139.   Defendant Cecil County, Maryland is liable for the acts of Defendants McCarthy, Wien, Tome, and Meffley on the theory of *respondeat superior.*

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants McCarthy, Wien, Tome, Meffley and Cecil County Maryland, jointly and severally, in an amount

36

to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

## COUNT VI
### ARTICLE 40 VIEWPOINT DISCRIMINATION
### BLOCKED FROM CECIL COUNTY AGENCY EMAIL SYSTEMS
(Defendants: Alan McCarthy, Jason Allison, Brian F. Miller, and Cecil County)

140.    Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

141.    On May 13, 2020, Plaintiff Sammons submitted an email grievance to Cecil County Council Manager James Massey and the entire Cecil County Council, including Defendant Meffley, complaining about the treatment he had received at the public budget meeting and about being blocked from the Cecil County Executive Facebook Page.

142.    On May 18, 2020, having received no response to his complaint, Plaintiff Sammons sent another email to Massey and the Cecil County Council.  This time, Plaintiff Sammons copied Defendant Allison, the County Attorney, and a reporter for the Cecil Whig, a local newspaper and on-line news outlet covering Cecil County news.  The email said:

> I have not received any response on this complaint. I would like to understand why this happened to me and not others. I also want to understand the legal precedence on the ability for McCarthy to continue to shut down constituents['] freedom of speech by blocking folks (including myself) on his County Executive Facebook page for months. This seems to be a pattern that no one in the County government has the courage to address. I expect to have the freedom to comment on our elected official's social media page as others do.

143.    After a few emails back and forth between Defendant Allison and Plaintiff Sammons, none of which were harassing or inappropriate, Defendant Allison said the following to Plaintiff Sammons via email on May 19, 2020 without any apparent provocation: "If [you] want to take this to war, I'll engage you in war. . . . At this point, I'm going to advise IT to block you from all communication with County agencies. You're adversarial, and have a litigious agenda.

37

You have freedom of expression, but it will be via pen and paper, USPS, and not in harassing email to myself or other County officials."

144.    Plaintiff Sammons responded to Defendant Allison's email minutes later, stating: "Are you trying to threaten[] me for trying to file a complaint? Really? Seems you are the only one making this political. I simply wanted to file a complaint."

145.    In a shocking admission, Defendant Allison replied to Plaintiff Sammons, stating:

No. What I'm doing is blocking you now from further communication via email. You can do what you want, consequences be damned. That's up to you. I could care less. What I'm not going to do is engage in a harassing course of discourse with you any longer. You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS. Your choice Sir. Bye bye.b

146.    On May 13, 2020 and again on May 18, 2020, when Plaintiff Sammons submitted his email grievances to Massey, Allison, and the entire Cecil County Council, Plaintiff was engaged in conduct protected by Article 40 of the Maryland Declaration of Rights.  Plaintiff Sammons was likewise engaging in conduct protected by Article 40 when he posted and attempted to communicate on the Cecil County Executive Facebook Page and when he attempted to participate in the public budget meeting on May 12, 2020.

147.    Defendant Allison's email responses to Plaintiff Sammons on May 19, 2020, in which Allison says he will "engage [Plaintiff Sammons] in war" and will "block [Plaintiff Sammons] from all communication with County agencies" constitutes unconstitutional retaliation for Plaintiff's exercise of protected activity under Article 40 of the Maryland Declaration of Rights. Defendant Allison was acting within the scope of his employment with Defendant Cecil County, Maryland when making these statements.

148.    Defendant Allison, acting at the direction of Defendant McCarthy and within the scope of his employment with Defendant Cecil County, Maryland, copied Defendant Brian Miller

38

on his email dated May 19, 2020 in which Allison states to Plaintiff Sammons: "What I'm doing is blocking you from further communication via email. . . . You have the right to communicate with County government. Your right is now restricted to paper and pen writing delivered via USPS." An earlier email on the same day and in the same email chain referenced the County's IT department: "At this point, I'm going to advise IT to block you from all communication with County agencies."

149.   As the Director of Information Technology ("IT") for Cecil County, Defendant Miller controlled the County's email system and had the requisite administrative credentials and technical knowledge to carry out the directive—from McCarthy and Allison—to ban Plaintiff from being able to email anyone within the Cecil County government.

150.   Defendant Miller followed the directive communicated by Allison and, from approximately May 19, 2020 until on or about June 15, 2020, caused all emails from Plaintiff Sammons to any recipient within the Cecil County government to be blocked or redirected so that they never reached their intended recipients.

151.   Defendants' action of banning Plaintiff Sammons from communicating with government officials via email was committed within the scope of their employment with Defendant Cecil County, Maryland and constitutes a clear and egregious violation of Article 40 of the Maryland Declaration of Rights.

152.   The fact that Plaintiff Sammons remained free to communicate with Cecil County government officials in other ways between May 19, 2020 and June 15, 2020—such as through the U.S. postal service—cannot excuse Defendants for violating Plaintiff Sammons' State constitutional rights.

39

153.    Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials was intentional and demonstrates the Defendants acted with actual malice and with a specific intent to harm Plaintiff's State constitutional rights in an egregious way.

154.    Defendants' acts of retaliation banning Plaintiff's right to email communications to Cecil County government officials demonstrate further unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Plaintiff Sammons' viewpoints and their dislike of his stated grievances.

155.    Defendant Cecil County, Maryland is liable for the acts of Defendants McCarthy, Allison, and Miller on the theory of *respondeat superior.*

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants Alan McCarthy, Jason Allison, Brian F. Miller, and Cecil County, Maryland, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees and other costs as permitted by law.

COUNT VII
DECLARATORY JUDGMENT RELIEF
(All Defendants)
28 U.S.C. § 2201

156.    Plaintiff incorporates the previous allegations in paragraphs 1 through 72 as if set forth herein verbatim.

157.    On July 18, 2018, Defendant McCarthy, Defendant Wein and the Cecil County Council adopted a written communication plan entitled "Cecil County Government Communication Plan," a copy of which is attached as **Exhibit 4**.

158.    In its discussion of Cecil County Facebook pages, the Communication Plan states in relevant part:

> Cecil County Government reserves the right to monitor and remove any content at any time for any reason at its sole, subjective discretion.  Comments, opinions, advice, statements, discussion posts, wall posts, and any other user-generated content that is deemed inappropriate by Cecil County Government will be removed from the page.

**Exhibit 4, pg.17**.

159.    The Communication Plan provides further that, "If an individual continually posts prohibited or offensive material, the Cecil County Government may exercise its right to block that individual from posting content onto the Cecil County Facebook Page."  **Exhibit 4, pg.18**.

160.    These provisions of the Cecil County Communications Plan, as currently drafted, constitute official written policies that are contrary to citizen's rights protected by the First and Fourteenth Amendments to the United States Constitution and also by Article 40 of the Maryland Declaration of Rights.

161.    The policy purports to permit Cecil County officials "to monitor and *remove* any content at any time *for any reason* at its *sole, subjective* discretion" without regard to important constitutional restrictions applicable to Cecil County officials that prohibit government censorship and viewpoint discrimination.

162.    The policy further purports to allow Cecil County officials to "remove" or censor from County social media pages any "[c]omments, opinions, advice, statements, discussion posts, wall posts, and any other user-generated content that is *deemed* inappropriate by Cecil County Government" without regard to the constitutional safeguards that prohibit governmental censorship and viewpoint discrimination like that described in this Complaint.

163.    The policy also permits County Officials to "block" members of the public from County social media cites anytime officials subjectively deem posted material to be "prohibited or

offensive." The government censoring speech because it is offensive or because officials dislike the message is the very definition of viewpoint discrimination that is constitutionally condemned in all forums.

164.   For the reasons stated, the Cecil County Communications Plan contains official written policies that are, on their face, unconstitutional.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment declaring the aforesaid written policies to be unconstitutional, null and void.

JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on Counts I through VI of this Complaint.  Count VII should be decided by the United States District Court.

March 24, 2021                                    Respectfully Submitted,

                                    /s/Ray M. Shepard
                                    Ray M. Shepard, CPF #9112190158
                                        District Court Bar No. 09473
                                    The Shepard Law Firm, LLC
                                    122 Riviera Drive
                                    Pasadena, Maryland 21122
                                    Phone: 410-255-0700
                                    Facsimile: 443-773-1922
                                    Email: Ray@Shepard.Law

42